IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| **BENJAMIN ENGLAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:04-1196** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on cross-Motions for Judgment on the Pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Benjamin England (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on July 1, 2002, (protective filing date), respectively, alleging disability as of that date due to "back problems, a herniated disc, nerve problems, knee pain, leg pain, tendonitis in the right elbow, earaches, and borderline intellectual functioning. (Tr. at 19, 44, 59-62, 71, 76, 302-06.) The claim was denied initially and upon reconsideration. (Tr. at 44-48, 50-51, 308-12, 314-15.) On August 22, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 52.) The hearing was held on November 20, 2003, before the Honorable John T. Yeary. (Tr. at 375-416.) By decision dated January 30, 2004, the ALJ determined that Claimant was not entitled to

benefits. (Tr. at 18-28.) The ALJ's decision became the final decision of the Commissioner on September 17, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 4-8.) On November 8, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the

>  degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>  (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 19, 27.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of degenerative disc disease, carpal tunnel syndrome, and depressive disorder. (Tr. at 19, 27.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 21, 27.) The ALJ then found that Claimant had a residual functional capacity for light work with the following limitations:

> he can occasionally climb, balance, stoop, kneel, crouch, and crawl; he is to avoid concentrated exposure to extreme cold, vibrations, and hazards (exertional and non-exertional limitations due to degenerative disc disease); he has mild to moderate pain but he could be attentive to and carry out the assigned work tasks (due to degenerative disc disease); he has moderate limitations in pushing and pulling bilaterally in the hands and arms and in gross and fine manipulation and feeling; the definition of moderate is a moderate limitation but still able to function (due to carpal tunnel syndrome); he requires low stress work involving simple, repetitive tasks (due to depressive disorder).

(Tr. at 24. 27.) As a result, Claimant could not return to his past relevant work. (Tr. at 24, 28.) Nevertheless, the ALJ concluded that Claimant could perform light jobs such as a gate guard, kitchen worker, mail room clerk, and sedentary jobs such as a dispatcher, surveillance systems monitor, and hand packer, which existed in significant numbers in the national economy. (Tr. at 26, 28.) On this basis, benefits were denied. (Tr. at 27-28.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on October 27, 1955, and was 48 years old at the time of the administrative hearing. (Tr. at 25, 75, 380.) Claimant has a General Equivalence Diploma and

completed vocational training in heating, cooling, and refrigeration. (Tr. at 19, 82-83, 383.) In the past, he worked as a heating/air conditioning servicer-installer. (Tr. at 19, 77, 383.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to (1) consider properly Claimant's IQ, borderline intellectual functioning, and visual impairment and (2) give great weight to Claimant's testimony regarding his limitations and to the opinions and residual functional capacity assessment of Claimant's treating psychiatrist, Ahmed D. Faheem, M.D. The Commissioner asserts that these arguments are without merit and that substantial evidence supports the ALJ's decision.

1. Consideration of Claimant's IQ, Borderline Intellectual Functioning, and Visual Difficulties

Claimant first asserts that the ALJ erred in failing to consider properly his IQ and borderline intellectual functioning in determining whether Claimant was disabled. (Pl.'s Br. at 3.) The Claimant asserts that his IQ score of 80 is significant and that his borderline intellectual functioning, coupled with his pain renders him totally disabled. (Pl.'s Br. at 14.) The Commissioner asserts that this argument is without merit.

The Court agrees with the Commissioner and finds Claimant's argument on this point is without merit. The ALJ considered Claimant's IQ and borderline intellectual functioning in his decision. He noted that pursuant to psychological testing, Dr. Ahmed D. Faheem, M.D., determined that Claimant had a composite IQ score of 81, was reading and performing arithmetic at the sixth

grade level, and was spelling at the fifth grade level, which placed him in the borderline range of intellectual functioning. (Tr. at 268, 271.) The ALJ found that Claimant's borderline intellectual functioning was not a severe impairment, noting that his IQ score was inconsistent with his twenty-year work history in a skilled occupation as a heating/air conditioning service-installer. (Tr. at 20, 77, 384.) Additionally, as the Commissioner notes, Claimant's education, daily activities, and Dr. Rodolfo Gobunsuy's assessment of normal intelligence, contradict Claimant's IQ score. (Tr. at 82, 98-102, 107-110, 174-75, 184-85, 394-401.) Notwithstanding the ALJ's finding that Claimant's borderline intellectual functioning was not a severe impairment, the ALJ accommodated Claimant's mental condition in the RFC determination by limiting Claimant to low stress working involving only simple, repetitive tasks. (Tr. at 24.)

Claimant further alleges that the ALJ discounted Claimant's visual limitations despite medical evidence establishing vision difficulties. (Pl.'s Br. at 8.) The Commissioner argues that the ALJ's finding of a non-severe visual impairment is supported by substantial evidence. (Def.'s Br. at 12-13.) The medical evidence submitted to the Appeals Council indicates that on December 4, 2003, Claimant presented to Dr. Ashraf Ali Chattha, with complaints of episodes where he experienced "wavy vision like looking thru glass, when he moves [right] hand it appears to move like in slow motion, he can see objects but does not [know] the names of those objects." (Tr. at 366.) He reported that this visual experience was twenty minutes in duration and had occurred approximately only twenty times throughout the last several years. (Tr. at 377.) Physical examinations and an x-ray of Claimant's eyes yielded normal results. (Tr. at 184, 195, 217, 232, 234, 246, 348, 351, 369-70, 374.) As the Commissioner notes, there is no evidence that he has been diagnosed with visual limitations or received any treatment from an eye specialist. Accordingly,

substantial evidence supports the ALJ's non-finding of a severe visual impairment.

Accordingly, the ALJ sufficiently considered and accounted for Claimant's IQ and borderline intellectual functioning in his decision. Claimant does not argue that his borderline intellectual functioning or visual impairment was of listing level severity, nor does he make any further specific arguments as to how the ALJ failed to consider properly these impairments. Accordingly, on this basis, Claimant's argument is without merit.

With regard to Claimant's assertion that his borderline intellectual functioning/visual impairment and pain in combination render him disabled, the Court finds that the ALJ's decision is supported by substantial evidence.

The Social Security Regulations provide as follows:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2004). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983.)

The Claimant fails to point to any specific portion of the record or any specific evidence

demonstrating that the ALJ failed to consider the severity of Claimant's impairments in combination and "fractionalized" the impairments. The ALJ noted the requirements of the Regulations with regard to considering impairments in combination. (Tr. at 19.) The ALJ then discussed Claimant's impairments, finding that his knee and leg pain, right elbow tendonitis, earaches, and borderline intellectual functioning were non-severe impairments. (Tr. at 20-21.) Further, the ALJ considered and accounted for Claimant's various impairments in determining Claimant's residual functional capacity. (Tr. at 22-24.) Additionally, the ALJ noted that he had considered all of the evidence of record in making his decision. (Tr. at 27.)

Upon review of the evidence of record and the ALJ's decision, the Court finds that the ALJ's consideration of Claimant's impairments is consistent with all applicable standards and Regulations, and his conclusions are supported by substantial evidence. Claimant's argument is therefore without merit.

2. Treating Physician Opinion

Claimant next alleges that the ALJ failed to give proper weight to the opinions and residual functional capacity assessment of Dr. Faheem, Claimant's treating psychiatrist. The Commissioner asserts that this argument is without merit.

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2003). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924

F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2003). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2003). Ultimately, it is the responsibility of the Commissioner, not the Court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2), 416.927(d)(2)(2003.)

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2002).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted). Although medical source

11

opinions are considered in evaluating an individual's residual functional capacity, the final responsibility for determining a claimant's RFC is reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(2) (2002). In determining disability, the ALJ must consider the medical source opinions "together with the rest of the relevant evidence we receive." Id. § 404.1527(b).

The evidence of record indicates that from March 8, 2002, to July 9, 2004, Claimant treated with Dr. Ahmed D. Faheem primarily for his mental condition. (Tr. at 267-72, 318-20.) On July 1, 2003, Claimant reported that he was doing all right, but had difficulty sleeping. (Tr. at 268.) Dr. Faheem noted that his attention and concentration were impaired and that he was functioning in the borderline range of functioning. (Tr. at 268.) In August and October, 2003, Dr. Faheem noted that Claimant's attention and concentration were normal, that his mood had improved, and his memory was intact. (Tr. at 268-69.) Contrary to these findings, on October 29, 2003, Dr. Faheem completed a Medical Assessment of Ability to do Work-Related Activities (Mental) form in which he found that Claimant had impaired abilities to perform several work-related functions. (Tr. at 27-72.) Specifically, Dr. Faheem found that Claimant's ability to perform the following work-related activities was poor: follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, maintain attention and concentration, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, and remember, understand, and carry out detailed or complex instructions. (Tr. at 270-71.) He further found that Claimant had a fair ability to function independently, maintain personal appearance, and understand, remember, and carry out simple job instructions. (Tr. at 270-71.)

The ALJ considered this evidence in his decision regarding Claimant's application for benefits. (Tr. at 23-24.) The ALJ summarized Claimant's treatment with Dr. Faheem, noting that he

determined that a Beck Depression Inventory documented Claimant's depression in the severe range. (Tr. at 24.) The ALJ noted however, that the Beck Inventory is based upon the claimant's subjective responses and therefore, "is untenable in light of the wide range of the claimant's daily activities," which are discussed below. The ALJ further noted that Dr. Faheem's treatment notes which indicated that Claimant was doing "okay" and that his attention and concentration had improved, did not support his "poor" limitations set forth in his RFC assessment. (Tr. at 23.)

The ALJ concluded that although Dr. Faheem's opinion was considered, he could not afford it controlling weight because the opined limitations were not supported by either Dr. Faheem's treatment notes or the record as a whole. (Tr. at 23-24.) The Court finds that the ALJ properly evaluated Dr. Faheem's opinion. The ALJ reviewed Claimant's treatment record with Dr. Faheem and discussed how the RFC assessment was not supported by Dr. Faheem's treatment notes or by the evidence of record. After a review of the entire record, including the evidence submitted to the Appeals Council, the Court finds that the ALJ properly evaluated this opinion evidence in accordance with the applicable law and Regulations and accorded it the weight to which it was properly entitled. The ALJ's determination is therefore supported by substantial evidence.

3. <u>Pain and Credibility Assessment</u>

Claimant first alleges that the ALJ improperly evaluated his subjective complaints of pain and other symptoms and erred in finding Claimant not entirely credible. (Pl.'s Br. at 3, 7-8.) The Commissioner argues that the ALJ's analysis was in accordance with the applicable law and Regulations.

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could

be expected to produce the pain alleged. 20 C.F.R. § 416.929(b) (2003); SSR 96-7p; see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 416.929(c)(4) (2003). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> > (I) Your daily activities;
> >
> > (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> >
> > (iii) Precipitating and aggravating factors;
> >
> > (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> >
> > (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

>> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3) (2003).

SSR 96-7p repeats the two-step regulatory provisions. See SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical

15

evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms and credibility. (Tr. at 22-23.) The ALJ found, with regard to the threshold test, that resolving all doubts in Claimant's favor, "the claimant has produced evidence of impairments that could reasonably be expected to cause the alleged symptoms." (Tr. at 22.) The ALJ therefore proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 22-23.) The ALJ noted the requisite factors, and then analyzed them in the opinion, concluding that the Claimant's complaints suggested a greater severity of impairment than could be shown by the objective medical evidence. (Tr. at 22-23.)

The ALJ noted that Claimant alleged disability in part because of constant pain in his back. (Tr. at 2.) He noted his testimony that his pain was a level nine out of ten at the hearing, which Claimant considered normal, even with medications. (Tr. at 22, 392.) The ALJ found Claimant's reported level unrealistic, as such pain would have required immediate hospitalization or emergency medical treatment. (Tr. at 22.) The ALJ did not find Claimant to be in any distress at the administrative hearing. (Tr. at 22.) He noted that Claimant took Oxycodone for pain, which he stated reduced the pain some and lasted for two hours. (Tr. at 22, 390.) Claimant received physical therapy and injections for the pain and also used a TENS unit. (Tr. at 22, 390-91.) The ALJ noted that Claimant used a heating pad and hot baths for pain relief. (Tr. at 22, 391.) The ALJ also noted Claimant's daily activities, finding them inconsistent with disabling pain. (Tr. at 22-23, 98-101, 394-99.) Claimant denied having any problems taking care of his personal needs, and reported his activities as preparing simple meals, helping with lawn care, taking out the trash, sweeping and cleaning, and shopping approximately thirty minutes every two to three days for food, medication,

and cigarettes. (Tr. at 23, 98-101, 394-99.) He further reported that he visited his family every two or four weeks and with friends once a week, watched television, occasionally read the Bible, attended church once a month, and drove himself to his appointments and to the store. (Tr. at 23, 98-101, 394-99.)

The ALJ further cited medical opinions and objective evidence to contradict Claimant's allegations of disabling symptoms, noting that an MRI of Claimant's thoracic spine revealed only mild concentric bulging and that an EMG and NCS of his lower extremities were normal without evidence of lumbar radiculopathy. (Tr. at 23.) Although Claimant may require surgery for his carpal tunnel syndrome, the ALJ noted that Claimant testified that he was able to use zippers, buttons, utensils, and was able to drive. (Tr. at 23, 393.) Furthermore, although Dr. Gobunsuy reported tenderness, redness, and swelling of Claimant's hands, he was able to write his name and pick up a coin using his right hand without difficulty. (Tr. at 23, 185.)

As the Commissioner points out, the ALJ's RFC assessment is consistent with Claimant's self-reported abilities. The ALJ required work that was less than the exertional level suggested by the State agency residual functional capacity assessments of Dr. Lambrechts and Dr. Gomez, and which took into account Claimant's credible complaints of pain. (Tr. at 24, 192-200, 243-51.) The ALJ limited Claimant to work at the light exertional level with limitations, including the requirement of low stress work involving simple, repetitive tasks due to his depressive disorder. (Tr. at 24.)

The Claimant does not assert that the ALJ failed to engage in the two-step analysis, and fails to assert specifically how the ALJ improperly assessed his pain and credibility. Claimant merely notes some of his medical conditions and restates his allegations of subjective pain. (Pl.'s Br. at 7-8) As noted, the ALJ properly evaluated Claimant's pain and credibility using the requisite analysis and considering the applicable factors.

Upon a careful review of the entire record, the Court finds the ALJ's analysis of Claimant's pain and credibility proper and in accordance with the applicable law and Regulations. The ALJ did not find that Claimant suffered no symptoms; he merely found that the symptoms were not as severe as Claimant alleged. (Tr. at 22-24.) The ALJ found that Claimant could perform only light work with additional limitations, and therefore took into account some of Claimant's complaints. The ALJ's determination on Claimant's pain and credibility is supported by substantial evidence and Claimant's argument is without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is **DENIED**, Defendant's Motion for Judgment on the Pleadings is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 31, 2006.

R. Clarke VanDervort
United States Magistrate Judge